IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL KEARNS,
   *Plaintiff,*

      v.

NORTHROP GRUMMAN
SYSTEMS CORPORATION,
   *Defendant.*

Civil Action No.: ELH-11-1736

**MEMORANDUM OPINION**

Plaintiff Michael Kearns has filed suit against his former employer, Northrop Grumman Systems Corporation ("Northrop Grumman. *See* Amended Complaint ("Complaint," ECF 20).[1] In particular, he has lodged claims based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I); "Title VII of the Civil Rights Act of 1991" (Count II)[2]; breach of contract (Count III); and intentional infliction of emotional distress (Count IV). In a section of his Complaint entitled "Jurisdiction," at ¶ 4, plaintiff also states that his suit implicates "Title 42 § 1981" and the "Maryland Human Rights Act."[3]

Defendant has filed a "Motion To Dismiss Counts II, III and IV And Any Section 1981 And Maryland Human Rights Act Claims From the Amended Complaint And, In The Alternative, For Summary Judgment On Count III" ("Motion," ECF 24), along with a supporting

---

[1] Plaintiff initially brought suit against "Northrop Grumman," but it was later determined that his former employer was "Northrop Grumman Systems Corporation." According to the docket, the parties were formally substituted on January 25, 2012.

[2] Presumably, plaintiff intended to invoke the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which contains Title VII and was amended by the Civil Rights Act of 1991.

[3] Presumably, plaintiff was referring to 42 U.S.C. § 1981, and the Maryland Fair Employment Practices Act, Md.Code (2009), State Gov't § 20–601 *et seq.*

memorandum ("Memo").[4]  Plaintiff has not responded to the Motion.  The Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

### Factual and Procedural Background[5]

Kearns was born on March 18, 1944, and is 68 years old.  Complaint ¶ 1.  He began working for Northrop Grumman, a defense contractor, on August 2, 1999.  *Id.* ¶¶ 1,3.  He worked at Northrop Grumman's facility in Annapolis Junction, Maryland, most recently as an "Incident Handler."  *Id.* ¶¶ 1, 5.  Kearns ceased his employment on August 27, 2010.  *Id.* ¶ 1.  According to Kearns, he was constructively terminated.  *Id.* ¶ 5.

Northrop Grumman hired Roderick Press as a supervisor on or about October 15, 2009.  *Id.* ¶ 2.  Press served as Kearns' immediate supervisor.  *Id.* ¶ 6.  Plaintiff avers that on several occasions he witnessed Press "berating [plaintiff's] co-worker, Jeanette Simpkins," an African American female, and that Press told Kearns he "should not trust" Simpkins.  *Id.* ¶¶ 7-8.[6]  Plaintiff further alleges that Press warned him "that in any controversy between Press and Ms. Simpkins, Kearns 'should choose very carefully which wagon' he hitched himself to."  *Id.* ¶ 9.

Plaintiff claims that Press "generated emails to Kearns wherein he asked Kearns to implicate Ms. Simpkins as non-performing," *id.* ¶ 10, but plaintiff "responded to Press that he did not feel comfortable making adverse statement [sic] against Ms. Simpkins."  *Id.* ¶ 11.

---

[4] The Memo was also docketed as ECF 24, and its pages are numbered consecutive to those of the Motion.  The Memo is accompanied by two exhibits: copies of the "Northrop Grumman Employee Mediation/Binding Arbitration Program" (Exhibit 1) and an "Employment Agreement" signed by Michael Kearns, dated November 16, 2002 (Exhibit 2).  The "Declaration Of Steve Zimmerman," who serves as "Human Resources Director for the Northrop Grumman Information Security business unit," attests to the authenticity of the copies.

[5] The Court construes the alleged facts in the light most favorable to plaintiff.  *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[6] The Complaint does not identify the race of either Kearns or Press, or the age of Simpkins or Press.

According to plaintiff, "Press immediately retaliated against Kearns[,] giving him Notice that he would be placed on a 30 day Performance Improvement Plan (PIP)," although, according to plaintiff, "up until that time there had been no negative comments about his performance…." *Id.*

Plaintiff asserts that he "complained to Human Resources on April 30, 2010 about Press' abusive behavior, filed an EEO complaint on May 3, 2010 and complained again to Human Resources on May 4, 2010." *Id.* ¶ 12.  But, plaintiff's complaints "failed to curtail the conduct." *Id*. ¶ 16.  According to plaintiff, on May 5, 2010, "Press served Kearns a scathing e-mail regarding his job performance and informed Kearns that he would contact Human Resources to proceed to the 'next step[,]' which Kearns interpreted as termination." *Id.* ¶ 13.

In addition to the interactions involving Simpkins, Kearns alleges that Press "targeted" plaintiff for "workplace harassment" and "intimidation," and "often suggest[ed] that Kearns was too old and should retire." *Id*. ¶ 14.  He asserts that between January 2010 and Kearns' resignation in August 2010, "Press subjected Kearns to such an offensive work environment that it resulted in his constructive discharge." *Id.* ¶ 15.  Plaintiff explains that he "collapsed emotionally and physically at work under the constant harassment, intimidation, and threats of termination," and alleges that he has been diagnosed as "suffering from a major depressive disorder," prompted by his work-related stress.  *Id.* ¶¶ 20-21.

In November 2010, several months after Kearns ceased working for defendant, he "filed a complaint and request for mediation under the Northrop Grumman's [sic] Employee Mediation/Binding Arbitration Program." *Id.* ¶ 17.  His request was denied on December 9, 2010, by "Kathleen G. Vagt, Senior Counsel for Northrop Grumman." *Id.* ¶ 18.[7]  Vagt stated, in

---

[7] Copies of plaintiff's request for mediation and Vagt's Letter of December 9, 2010, were appended to plaintiff's original complaint (ECF 1) as "Exhibit 1" and "Exhibit 2," respectively.

relevant part: "Northrop Grumman's Employee Mediation/Binding Arbitration Program covers claims for which a court could grant relief, and Mr. Kearns' Request does not contain such a claim. Further, Northrop Grumman is not interested in mediating his claim. The Request is therefore denied." *See* ECF 1, Exh. 2; *see also* Complaint ¶¶ 18-19.

Kearns also "filed a complaint" with the Equal Employment Opportunity Commission ("EEOC"), "which issued a right to sue letter on March 30, 2011." *Id.* ¶ 22.[8] This suit followed, in which plaintiff seeks compensatory damages in the amount of $2,000,000 and punitive damages in the amount of $4,000,000. Additional facts are included in the Discussion.

**Standard of Review**

Defendant has moved to dismiss the case pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff

---

Although they were not resubmitted with the Amended Complaint (ECF 20), plaintiff refers to them in that submission.

[8] It is not clear when the EEOC complaint was filed, or if it is distinct from the "EEO complaint" plaintiff claims he filed on May 3, 2010. *See id.* ¶ 12. A copy of the right to sue letter was appended to plaintiff's original complaint (ECF 1) as "Exhibit 3." Although it was not resubmitted with the Amended Complaint (ECF 20), plaintiff specifically refers to the exhibit.

need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2).  *Id.* at 555.  To satisfy the minimal requirements of Rule 8(a)(2), however, a complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Id*. at 556.  And, the rule demands more than bald accusations or mere speculation.  *Id*. at 555.  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the rule.  *Id.*

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008).  Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

To resolve a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010).  Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).  But, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

In considering a Rule 12(b)(6) dismissal, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448; *MCS Services, Inc. v. Jones*, No. 10-1042, 2010 WL 3895380, at *1 n. 3 (D. Md. Oct. 1, 2010); *Benfield Elec. Co., Inc. v. Keybank*, No. 09-2071, 2009 WL 5206626, at *2 (D. Md. Dec. 23, 2009). In the case at bar, I have considered the exhibits appended to the initial complaint, which are referenced in the Amended Complaint, as well as "Northrop Grumman Employee Mediation/Binding Arbitration Program" and the "Employment Agreement," appended to the Motion, both of which are relied upon in plaintiff's Complaint, and the authenticity of which has not been disputed by plaintiff.[9]

## Discussion

### A. Retaliation

In Count II, plaintiff asserts a claim for retaliation under Title VII, alleging that he "came to [Simpkins'] defense challenging Press for his treatment of her." Complaint ¶ 29.[10] He reiterates that he "complained to Human Resources and to EEO [sic] about the conduct of Press towards him and Ms. Simpkins," *id.* ¶ 30, and that Press "retaliated against Kearns with negative

---

[9] Because defendant appended two exhibits to its Motion, defendant moved in the alternative for summary judgment with respect to Count III, pursuant to FED. R. CIV. P. 56. *See* Memo at 6 n. 3. As I am able to consider these exhibits without converting the motion to dismiss into one for summary judgment, *see Philips, supra,* 572 F.3d at 180, I will construe the Motion as a motion to dismiss, rather than as a motion for summary judgment.

[10] There is a misnumbering on page 5 of the Complaint. Count II contains six paragraphs, numbered as follows: 29, 28, 29, 30, 31, and 32. The "¶ 29" referred to here is the first ¶ 29.

performance ratings and a concerted effort to create a work environment that would drive Kearns from the workplace, and which did in fact drive Kearns from the workplace." *Id.* ¶ 31. Further, plaintiff avers that "Northrop Grumman Human Resources knew about the harassment of Kearns and Ms. Simpkins and took no action to curtail the conduct of Press." *Id.* ¶ 32.

"Title VII prohibits an employer from retaliating against an employee who exercises his Title VII rights." *Thorn v. Sebelius*, 766 F.Supp.2d 585, 600 (D. Md. 2011). The purpose of Title VII's antiretaliation provision is to "[m]aintain[] unfettered access to statutory remedial mechanisms" for employees who fear reprisal. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). In order to establish a prima facie claim of retaliation under Title VII, a plaintiff "must show that he engaged in protected activity, that [his employer] took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). *Accord Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010), *aff'd,* ___ U.S. ___, No. 10–1016, 2012 WL 912951 (Mar. 20, 2012); *Beall v. Abbott Laboratories,* 130 F.3d 614, 619 (4th Cir. 1997). "If a plaintiff 'puts forth sufficient evidence to establish a prima facie case of retaliation' and a defendant 'offers a non-discriminatory explanation' for [the adverse action], the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext.'" *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Yashenko v. Harrah's Casino,* 446 F.3d 541, 551 (4th Cir. 2006)).

"A protected activity is one in which the employee opposes an employment practice on the ground that it violates Title VII." *Johnson v. Giant Food, Inc.*, No. Civ. JFM–00–3465, 2000 WL 1831962, *6 (D. Md. Nov. 27, 2000) (citing *Simmons v. Shalala,* 946 F.Supp. 415, 420 (D. Md. 1996)). *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an

employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). As the Fourth Circuit has explained, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005), *cert. denied,* 547 U.S. 1041 (2006). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 259 (4th Cir. 1998).

Of import here, protected oppositional activity "may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complain[ts] . . . about suspected violations'" of Title VII. *Id.* (internal citations omitted). Moreover, the Fourth Circuit has held that the filing of an equal employment opportunity complaint constitutes protected activity. *See, e.g., King v. Rumsfeld,* 328 F.3d 145, 151 (4th Cir.), *cert. denied*, 540 U.S. 1073 (2003); *see also Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

Defendant contends that plaintiff has failed to state a claim for retaliation because he has not alleged "that he engaged in any conduct that would constitute protected activity within the meaning of Title VII." Memo at 8. It posits: "Plaintiff does not state anywhere in the Amended Complaint that Mr. Press' actions toward Ms. Simpkins were in any way related to a protected classification under Title VII," *id*. at 9, such as race, color, religion, gender, or national origin, and therefore plaintiff did not engage in protected activity. *See Lightner v. City of Wilmington*,

545 F.3d 260, 264 (4th Cir. 2008). Defendant continues: "Although Plaintiff claims to have complained to Human Resources and 'EEO,' he does not allege that he expressed in these complaints a belief that Mr. Press was harassing or discriminating against Ms. Simpkins because of her race, color, religion, sex or national origin." Memo at 9. Defendant concludes: "To accept that any protected activity took place would be pure speculation. For purposes of deciding this motion, the Court cannot assume that Plaintiff made complaints of discrimination based on the vague references in the Amended Complaint." *Id.*

I agree with defendant that the Complaint does not sufficiently allege conduct involving a protected activity. To be sure, the filing of an equal employment opportunity complaint constitutes protected activity. *King,* 328 F.3d at 151. But, Title VII is not "a general whistleblower statute." *Lightner*, 545 F.3d at 264. In the context of a claim under Title VII, an "EEO complaint" must address "discrimination on the basis of specifically enumerated grounds: 'race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1)). Put another way, "Title VII's anti-retaliation provision only protects activities pertaining to complaints or participation in investigations relating to discrimination on the basis of race, color, religion, sex, or national origin." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, *13 (D. Md. Aug. 6, 2010), *aff'd*, 410 F. App'x 645 (4th Cir. 2011).

As the Amended Complaint reveals, plaintiff states that he filed complaints with Human Resources and the EEOC, but does not specify the content of those complaints. Complaint ¶ 12. He notes that Simpkins is an African American woman, *id.* ¶ 7, but nowhere in his Complaint does he allege that Press's treatment of Simpkins was motivated by animus based on race or gender. And, plaintiff has clearly alleged that Press's conduct as to Kearns was motivated by animus based on age, which would be relevant to a claim for retaliation under the ADEA, but not

Title VII. In my view, the Amended Complaint simply does not indicate that plaintiff complained of discriminatory conduct based on any category protected under Title VII, and therefore the Title VII retaliation claim must fail.

It is also salient, as defendant notes, that plaintiff "has had two opportunities to state adequately a claim for retaliation under Title VII—in the original complaint and in the Amended Complaint." Memo at 10. In response to plaintiff's initial complaint (ECF 1), defendant filed a motion for a more definite statement (ECF 11), which the Court was granted after plaintiff failed to oppose it (ECF 13). One of the defects in the initial complaint as identified in the motion for a more definite statement was that, with respect to Count II, plaintiff failed to allege that he engaged in a protected activity, prompting the alleged retaliation. Yet, despite notice of this defect, plaintiff's Amended Complaint failed to rectify the omission. Accordingly, I will grant defendant's motion to dismiss as to Count II.[11]

## B. Breach of Contract[12]

In Count III, plaintiff asserts a claim for breach of contract, alleging that defendant's refusal to grant his request for mediation "DENIED Mr. Kearns his right to participate in mediation under the Northrop Grumman's Employee Mediation/Binding Arbitration Program guaranteed all Northrop Grumman employees by virtue of their employment contract," and "DENIED Mr. Kearns the right to make and enforce a contract guaranteed by virtue of his employment." Complaint ¶¶ 35-36.

---

[11] Having found that plaintiff did not engage in a protected activity under Title VII, I need not address the remaining elements of a prima facie case of retaliation under Title VII.

[12] As to contract actions, Maryland courts ordinarily apply the law of the jurisdiction where the contract was made, under the principle of *lex loci contractus*. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007). Defendant's Motion and Memo presuppose the application of Maryland law to the breach of contract claim, although the Employment Agreement (defendant's Exhibit 2) clearly states that it was executed in Washington, D.C. In any event, the relevant law is substantially identical in either jurisdiction.

Defendant argues that the breach of contract claim must fail because plaintiff "had no contractual 'right to participate in mediation' under either the [Employee Mediation/Binding Arbitration Program (the 'Program')] or the Employment Agreement…." Memo at 11. As "Northrop Grumman was not contractually obligated to grant Plaintiff's request for mediation," it follows that defendant "has not committed a breach." *Id.* at 12.

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). *See also Capitol Radiology v. Sandy Spring Bank*, No. DKC 09-1262, 2010 WL 610785, *6 (D. Md. Feb. 17, 2010), *aff'd*, 439 F. App'x 222 (4th Cir. 2011) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.")). Notably, "'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties…unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.'" *Dyer v. Bilaal*, 983 A.2d 349, 354-55 (D.C. 2009) (citation omitted). "The purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005). *See also Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *Jones v. Hubbard*, 356 Md. 513, 533, 740 A.2d 1004, 1015 (1999).

The Employment Agreement between Kearns and Northrop Grumman does not mention mediation or any other form of dispute resolution. Accordingly, the terms of the Employment Agreement did not give rise to a contractual obligation to mediate. *See* defendant's Exhibit 2. And, the Program explicitly provides: "[M]ediation is not mandatory and either [the employee] or the Company can refuse to mediate a claim." *See* defendant's Exhibit 1 at 4. Although plaintiff asserts he had a "right to participate in mediation under the [Program]" and "by virtue of [his] employment contract," Complaint ¶ 35, that assertion is plainly contradicted by the documents he referred to in his own Complaint.

In my view, the documents are unambiguous, and indicate that plaintiff had no contractual right to mediation. Accordingly, there is no factual or legal basis to support a breach of contract claim, and Count III must be dismissed.

### C. Intentional Infliction of Emotional Distress

In Count IV, plaintiff asserts a claim for intentional infliction of emotional distress. He alleges that Press "intentionally and willfully subjected [him] to [a] severely emotionally harmful work environment intended to cause him emotional harm and which did cause him a major depressive disorder, with physical manifestations that resulted in [his] constructive discharge…." Complaint ¶ 37. Further, he asserts: "When informed as to the conduct of its agent, [Press,] Northrop Grumman took no action to train or supervise Mr. Press in a manner that curtailed the harassment of Mr. Kearns." *Id.* ¶ 39.

Defendant urges dismissal of Count IV, arguing: "Plaintiff does not allege any 'extreme and outrageous' conduct that could form the basis for his intentional infliction of emotional distress claim." Memo at 14.

"Intentional infliction of emotional distress is a cognizable tort in Maryland." *Abrams v. City of Rockville,* 88 Md. App. 588, 597, 596 A.2d 116, 120 (1991).[13]  In order to establish a claim for the tort of intentional infliction of emotional distress, a plaintiff must show that: "(1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 465-66 (D. Md. 2002). *See also Respess v. Travelers Cas. & Sur. Co. of America*, 770 F. Supp. 2d 751, 757 (D. Md. 2011), *Crouch v. City of Hyattsville,* No. 09-2544, 2010 WL 3653345, at *7-8 (D. Md. Sept. 15, 2010); *Baltimore-Clark v. Kinko's, Inc.,* 270 F. Supp. 2d 695, 701 (D. Md. 2003); *Borchers v. Hrychuk,* 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999).

With respect to claims for intentional infliction of emotional distress, "[e]ach of [the] elements must be pled and proved with specificity.  It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Serv. Admin.,* 78 Md. App. 151, 175, 552 A.2d 947, 959 (1989); *see also Arbabi,* 205 F. Supp. 2d at 466.

Moreover, "The 'extreme and outrageous' standard is quite high." *Respess,* 770 F. Supp. 2d at 758.  In particular, the defendant's conduct must be "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Farasat v. Paulikas,* 32 F. Supp. 2d 244, 247 (D. Md. 1997) (internal citation omitted).  Put another way, "[t]o be actionable, the conduct

---

[13] With respect to tort claims, Maryland applies the principle of *lex loci delicti*, i.e., the law of the place where the alleged harm occurred. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 606 (D. Md. 2008); *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).  Because the alleged harm occurred in Maryland, while plaintiff was working at the Annapolis Junction facility, I will apply Maryland law with respect to plaintiff's tort claim.

relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id.* at 248 (quoting *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 59-60, 502 A.2d 1057, 1064, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986)). As the Maryland Court of Appeals said in *Kentucky Fried Chicken National Management Co. v. Weathersby,* 326 Md. 663, 670, 607 A.2d 8, 11 (1992), the tort is used "only for opprobrious behavior" involving "truly outrageous conduct."

"Particularly in an employment situation, a plaintiff faces insuperable hurdles in attempting to plead a proper claim of intentional infliction of emotional distress." *Farasat*, 32 F. Supp. 2d at 247-48 (although plaintiff's supervisor "committed acts of sexual harassment against plaintiff," including unwanted physical conduct and sexually-charged and offensive statements, the conduct was not so "extreme and outrageous" as to support a claim for intentional infliction of emotional distress). Indeed, claims for intentional infliction of emotional distress are disfavored and difficult to establish and, as a result, are "rarely viable." *Id.* at 247.

In my view, plaintiff has not set forth facts with the requisite level of specificity that would permit me to find that Press's conduct was "extreme and outrageous."[14] Kearns has alleged that Press told him "he would be placed on a 30 day Performance Improvement Plan,"[15] Complaint ¶ 11; "served Kearns a scathing e-mail regarding his job performance and informed Kearns that he would contact Human Resources to proceed to the 'next step' which Kearns interpreted as termination," *id.* ¶ 13; "targeted Kearns for workplace harassment, intimidation, and often suggest [sic] that Kearns was too old and should retire," *id.* ¶ 14; and "subjected

---

[14] Having found that plaintiff has not sufficiently alleged "extreme and outrageous" behavior on the part of defendant and/or its agent, I need not reach the remaining elements of a claim for intentional infliction of emotional distress.

[15] It is not clear whether Kearns was actually placed on such a plan.

Kearns to such an offensive work environment that it resulted in his constructive discharge." *Id.* ¶ 15.

Such conduct is not "extreme and outrageous" within the meaning of the tort. As the Maryalnd Court of Appeals has said: "The workplace is not always a tranquil world where civility reigns. Personality conflicts and angst over disciplinary actions can be expected….If anxiety from management decisions were 'deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress.'" *Kentucky Fried Chicken, supra*, 326 Md. at 679, 607 A.2d at 16 (citation omitted).

"As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness…as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi*, 205 F. Supp. 2d at 466 (not "extreme and outrageous," even though plaintiff resigned because she was subjected to a hostile work environment characterized by "derogatory remarks based upon her sex as a female, her religion as a Muslim, and her national origin as an Iranian"). *See also Lerner v. Shinseki*, No. ELH–10–1109, 2011 WL 2414967 (D. Md. June 10, 2011) (dismissing intentional infliction of emotional distress claim where the plaintiff alleged that his supervisors harassed him on the basis of age and made age-related comments to him, including telling him "you are too old to change"); *Beye v. Bureau of Nat. Affairs*, 59 Md. App. 642, 477 A.2d 1197 (1984) (finding it insufficiently extreme and outrageous that plaintiff, after implicating his supervisor in illegal activity, was given poor performance reviews, threatened with termination and bodily injury, and harassed).

Furthermore, as with Count II, defendant's motion for a more definite statement highlighted plaintiff's failure, in his initial complaint, to identify "extreme and outrageous" conduct and that defect has gone unremedied. Indeed, Count IV of the Amended Complaint is entirely unchanged from its original version in the initial complaint. Plaintiff cannot prevail on a claim of intentional infliction of emotional distress on the facts as alleged, and accordingly, Count IV will be dismissed.

*D. Claims Arising Under 42 U.S.C. § 1981 and the "Maryland Human Rights Act"*

As noted, Amended Complaint ¶ 4, appearing under the heading "Jurisdiction," states, as a basis for federal jurisdiction in this case: "Federal Question: The Age Discrimination in Employment Act of 1967 (ADEA); Title VII of the Civil Rights Act of 1991; Title 42 § 1981; Maryland Human Rights Act." However, the Complaint does not lodge discrimination claims under either § 1981 or Maryland state law.[16] Thus, Northrop Gruman asserts: "[T]his Court should strike the references to the [Maryland Human Rights Act] and Section 1981 in paragraph 4 of the Amended Complaint and dismiss any MHRA or Section 1981 claims from the Amended Complaint." Memo at 17.

Plaintiff's singular references in ¶ 4 of the Amended Complaint to "Title 42 § 1981" and the "Maryland Human Rights Act" are not linked to any captioned claims or allegations. To the extent that plaintiff has attempted to state claims under these two statutes, he has not set forth any basis to do so. Therefore, I will grant defendant's Motion.

---

[16] Plaintiff's initial complaint (ECF 1) styled Count III, the breach of contract claim, as a § 1981 claim. The claim was recaptioned after it was pointed out in defendant's motion for a more definite statement that § 1981 guarantees "[a]ll persons within the jurisdiction of the United States…the same right…to make and enforce contracts…as is enjoyed by white citizens," but plaintiff failed to allege that he was discriminated against on the basis of race or national origin, or even to identify what his race or national origin is.

**Conclusion**

For the foregoing reasons, the Court will grant defendant's motion to dismiss as to Counts II, III, and IV, and will strike the references to "Title 42 § 1981" and the "Maryland Human Rights Act." A separate Order, consistent with this Opinion, follows.

Date: April 6, 2012                                            /s/
                                                                           Ellen Lipton Hollander
                                                                           United States District Judge